IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CV-00138-BR

KEITH EDWARD FRAZIER,
    Plaintiff,

v.

JEFFREY BAXTER, CHARLES FARRAR,
JESSE DICKINSON, JERRY SEIGHMAN,
ISAAC BARRET, CITY OF WASHINGTON,
CITY OF GREENVILLE,
    Defendants.

ORDER

This matter is before the court on defendants Jeffrey Baxter, Charles Farrar, and the City of Greenville's motion to dismiss (DE # 21); defendants Jesse Dickinson, Jerry Seighman, Isaac Barrett, and the City of Washington's motion to dismiss (DE # 39); and plaintiff Keith Frazier's motion for summary judgment (DE # 34).

## I. BACKGROUND

In 2013, plaintiff Keith Frazier ("Frazier") commenced this *pro se* 42 U.S.C. § 1983[1] action against the City of Greenville, two Greenville police officers (Baxter and Farrar), the City of Washington, and three Washington police officers (Dickinson, Seighman, and Barrett). (DE # 5.) Frazier alleges various constitutional violations arising from five incidents involving the Washington and Greenville police officers between 21 February 2011 and 7 April 2011. (Id.) Specifically, Frazier alleges that his Fourteenth Amendment Due Process and Equal Protection rights, as well as his Fourth Amendment rights, were violated. (Id. at 2, 5.)[2]

---

[1] As U.S. Magistrate Judge James E. Gates has noted, (DE # 16), while Frazier failed to check the space on his complaint form indicating he was proceeding under § 1983, it is clear he is bringing a § 1983 action.

[2] Citation to the complaint is to the page numbers assigned by the court's electronic filing system.

After U.S. Magistrate Judge James E. Gates reviewed Frazier's claims pursuant to 28 U.S.C. § 1915(e)(2)(B), (DE # 16), defendants Baxter, Farrar, and the City of Greenville (collectively "Greenville defendants") filed an answer and a motion to dismiss on 1 May 2014. (DE ## 20, 21.) Frazier filed a response to the motion to dismiss, (DE # 37), to which the Greenville defendants replied, (DE # 54).

Defendants Dickinson, Seighman, Barrett, and the City of Washington (collectively "Washington defendants") filed an answer and a motion to dismiss on 9 June 2014. (DE ## 38, 39.) Frazier filed a response, (DE # 52), to which the defendants replied, (DE # 56). Frazier then filed a sur-reply. (DE # 59.)

Frazier filed a motion for summary judgment on 30 May 2014 as to his claims against the Greenville defendants. (DE # 34.) Those defendants responded, (DE # 36), and Frazier then replied, (DE # 43). Although the summary judgment motion did not address the claims against the Washington defendants, they nevertheless filed a response. (DE # 46.)

## II. STANDARD OF REVIEW

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This rule permits a court to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A 12(b)(6) motion should only be granted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, a complaint that proffers only "a formulaic recitation of the elements of a cause of action" with no "further factual enhancement"

is insufficient.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  To survive dismissal, a party must come forward with "enough facts to state a claim to relief that is plausible on its face."  Id. at 548.  The plausibility standard is met "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  The court must accept as true all well-pleaded allegations and must draw all reasonable factual inferences in favor of the plaintiff.  See Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005); Myan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  Additionally, a pleading of a *pro se* plaintiff must be liberally construed, but the court is not required to "conjure up [facts] never squarely presented to [it]."  Beaudett v. City of Hampton, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

Defendants have alternatively moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The same standard applies to both Rule 12(c) and Rule 12(b)(6) motions: "Taking the nonmoving party's allegations as true, dismissal is inappropriate unless it appears beyond doubt that the non-moving party can prove no facts sufficient to support his claim for relief."  See Eagle Nation, Inc. v. Market Force, Inc., 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001) (internal citations omitted).  Because both sets of defendants filed their answers and motions simultaneously, the motions will be construed as Rule 12(c) motions.  See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (stating that when an answer and motion to dismiss are filed simultaneously, the motion is technically one for judgment on the pleadings).  The only practical difference is that the court will consider the answer in addition to the complaint.  See, e.g., Continental Cleaning Serv. v. U.P.S., No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999).  At this stage, while a court may generally consider only matters presented

within the pleadings, a court may take judicial notice of items in the public record.  See Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Walker, 589 F.3d at 139 ("[A] federal court may consider matters of public record such as documents from a prior state court proceeding in conjunction with a Rule 12(b)(6) motion.").

## III. DISCUSSION

The Greenville defendants initially failed to serve a paper copy of their motion to dismiss on Frazier, as required by the Electronic Case Filing Administrative Policies and Procedures Manual.  The court ordered them "to properly serve Frazier with their motion no later than 23 May 2014," (DE # 33), but they did not serve it until 30 May 2014, due to inadvertence of counsel, (DE # 35).  Frazier urges the court to deny the Greenville defendants' motion on this basis. (DE # 37, at 2 ¶¶ 4-9.)  However, Frazier has alleged no prejudice due to the late service.  While emphasizing the importance of respecting court orders, the court will consider the Greenville defendants' motion.

**A. Claims arising from the 21 February 2011 and 3 March 2011 traffic stops**

Frazier alleges that on both 21 February 2011 and 3 March 2011, Seighman, a City of Washington police officer, violated his Fourth and Fourteenth Amendment rights.  (DE # 5, at 5.) The Fourth Amendment, as incorporated through the Fourteenth Amendment's Due Process Clause, prohibits state actors from conducting unreasonable searches and seizures.  U.S. Const. amend. IV, XIV.  When police stop an automobile, a "seizure" has occurred for Fourth Amendment purposes, no matter how brief the detention.  See United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008).  Thus, a stop must be "reasonable" under the circumstances.  Id. Sufficient justification for a stop exists if an officer observes a traffic violation or has probable

4

cause to believe that a traffic violation has occurred.  Id.  A traffic stop may also be "reasonable" if the there is reasonable suspicion "that criminal activity may be afoot."  Terry v. Ohio, 392 U.S. 1, 30 (1968); see also United States v. Arvizu, 534 U.S. 266, 273 (2002).  Thus, a traffic stop not justified at its inception by reasonable suspicion or probable cause runs afoul of the Fourth Amendment.

Frazier alleges that Seighman stopped his vehicle on 21 February 2011 although he had committed "no traffic offense or any other offense."  (DE # 5, at 3.)  He states that Seighman pulled him over "solely to identify who [he] was."  (Id.)  Frazier alleges that Seighman forced him to submit to a breathalyzer test, which returned a result below the legal limit, and that "no charges stemmed from this altercation."  (Id. at 3.)  Frazier further alleges that on 3 March 2011, Sieghman again stopped his vehicle although he had committed "no traffic violation or any other criminal offense."  (Id.)  Frazier maintains that no charges ever arose from this incident.  (Id.)

With regard to the 3 March 2011 stop, the Washington defendants argue that Frazier has failed to state a valid Fourth Amendment claim because he has not alleged that he was arrested, wrongfully searched, or that any evidence was seized during the stop. (DE # 40, at 13.)  Such allegations are unnecessary.  As noted above, a traffic stop by a police officer is a "seizure" for Fourth Amendment purposes.  Branch, 537 F.3d at 335.  No further showing of arrest, search, or seizure of evidence is necessary to implicate the Fourth Amendment.  See id.

The Washington defendants further argue that Frazier's claims should be dismissed because, based on a prior criminal case, his claims are barred by collateral estoppel, judicial estoppel, waiver, and the United States Supreme Court's decision in Heck v. Humphry, 512 U.S. 477 (1994).  (DE # 39.)  Several of the alleged incidents in Frazier's complaint directly relate to

5

a criminal case in this district where Frazier pled guilty to armed robbery and firearm charges. In that case, Frazier, through counsel, filed several motions to suppress based largely on the same facts alleged in his civil complaint. (Case No. 4:11-CR-00113-F-1, DE ## 76, 97-99, 118.) Each motion was denied. (Id., DE ## 109, 125.) Frazier also filed three separate motions to withdraw his guilty pleas, (id., DE ## 154, 169, 183), but all were denied, (id., DE ## 156, 171, 186). On 28 May 2014, the Fourth Circuit Court of Appeals affirmed the validity of Frazier's guilty plea as to one count,[3] but vacated his sentence on that count and remanded for re-sentencing. (Id., DE # 236.)

First, the Washington defendants urge the court to dismiss Frazier's claims under the doctrine of collateral estoppel, (DE # 40, at 7), which prevents the relitigation of issues when five factors are met:

> (1) the issue sought to be precluded is identical to one previously litigated;
> (2) the issue must have been actually determined in the prior proceeding;
> (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;
> (4) the prior judgment must be final and valid; and
> (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998) (citing Ramsay v. INS, 14 F.3d 206, 210 (4th Cir. 1994)). The court may consider an affirmative defense of *res judicata* in a motion for judgment on the pleadings, and the court is permitted to "take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issues of fact." Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). The Washington defendants state that under collateral estoppel, all of Frazier's claims are barred because "[d]uring his

---

[3] Frazier pled guilty to two felony counts, but only appealed his plea as to one of the counts.

criminal case, Frazier raised all of the alleged complaints and constitutional violations that he raises in this civil action." (DE # 40, at 8.) They argue that all of Frazier's current claims formed the basis of his denied motions to suppress and motions to withdraw his guilty pleas in his criminal case. (Id.)

The court finds that Frazier never litigated the legality of the 21 February 2011 stop or the 3 March 2011 stop in his criminal case. These issues were never actually determined, nor were they critical and necessary to any judgment in Frazier's criminal case. It is true that Senior U.S. District Judge James C. Fox, in an order denying one of Frazier's motions to suppress, referred to Seighman's stop of Frazier on 21 February 2011. (Case No. 4:11-CR-00113-F-1, DE # 109, at 3.) However, Judge Fox did nothing more than briefly state that Seighman issued Frazier a banishment notification. (Id.) No facts or other information regarding how Sieghman initially came into contact with Frazier are mentioned, let alone analyzed. (Id.) Additionally, Judge Fox never mentioned the 3 March 2011 stop. (Id.) As such, collateral estoppel will not bar Frazier's Fourth Amendment claims against Seighman arising out of the 21 February 2011 and the 3 March 2011 stops.

Second, the Washington defendants maintain that Frazier's claims should be dismissed under the doctrine of judicial estoppel and the related doctrine of waiver. (DE # 40, at 9.) Judicial estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996). Because Frazier pled guilty to armed robbery charges, the Washington defendants argue that he has waived his right "to contest the validity of the stops or other conduct leading up to the criminal charges." (DE # 40, at 10.)

7

With regard to the 21 February 2011 and 3 March 2011 stops, judicial estoppel is not implicated because the Washington defendants point to nothing which suggests that Frazier took a position on the legality of these stops during his criminal case. Additionally, Frazier's guilty plea on the criminal charges did not amount to an admission that traffic stops leading to his subsequent arrest were legal. See Haring v. Prosise, 462 U.S. 306, 318 (1983) (stating that "[plaintiff]'s guilty plea in no way constituted an admission that the search of his apartment was proper under the Fourth Amendment"). As the Supreme Court has recognized, pleading guilty does not amount to "a 'waiver' of antecedent Fourth Amendment claims that may be given effect outside the confines of a criminal proceeding." Id. at 320. Thus, for purposes of this § 1983 action, Frazier did not waive his Fourth Amendment claims by pleading guilty to the robbery charges.

Third, the Washington defendants argue that the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, bars Frazier's claims. (DE # 40, at 11.) In Heck, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87. The Washington defendants maintain that Heck bars all of Frazier's civil claims because "the issues involved in Frazier's criminal case were clearly inextricably intertwined with the issues in this civil action. They are, in fact, the *same* issues. A ruling in Frazier's favor in this case would undoubtedly undermine the rulings made by Judge Fox during Frazier's criminal case . . . ." (DE # 40, at 12.)

8

Defendants have failed to show that, regarding the 21 February 2011 and 3 March 2011 stops, a favorable ruling on Frazier's § 1983 claims would render invalid any judgment or conviction from Frazier's criminal case. As noted above, these issues were not directly addressed in Frazier's criminal case and played no role in Judge Fox's denial of Frazier's motions to suppress.

Frazier's Fourth Amendment claims against Seighman arising out of the 21 February 2011 and 3 March 2011 traffic stops survive the Washington defendants' motion for judgment on the pleadings. To the extent that Frazier alleges Equal Protection violations against Seighman arising out of these stops, those claims will be dismissed because Frazier has failed to allege that Seighman treated him differently than any similarly situated individual. See Morrison v. Garraghty, 239 F.3d 648, 657 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

**B. Claims arising from the 31 March 2011 traffic stop and arrest, 4 April 2011 search warrant execution, and 7 April 2011 arrest**

Frazier claims that on 31 March 2011, Seighman and Barrett of the Washington Police Department ("WPD") violated his Fourth and Fourteenth Amendment rights. (DE # 5, at 3-5.) He alleges that "Seighman once again pulled [him] over solely to identify whom [he] was and . . . decided to charge and falsely arrest [him] for an offense that did not occur." (Id. at 3.) Frazier contends there was "no apparent criminal or traffic violation" that gave rise to the stop. (Id. at 7.) He states that his vehicle and all the occupants therein "were searched without consent, probable cause, or a warrant." (Id.) Frazier alleges that Barrett "authorized [the] illegal search

9

of [his] vehicle, without a warrant, probable cause, or consent." (Id. at 4.) He states that Barrett seized $292.86 and his iPhone from the vehicle, and that despite the fact that charges stemming from this incident were dropped, his property still has not been returned. (Id. at 4, 7.)

Frazier alleges that on 4 April 2011, Barrett, along with Farrar and Baxter of the Greenville Police Department ("GPD"), violated his Fourth and Fourteenth Amendment rights. (Id. at 2, 4-6, 9.) He contends that Barrett made false statements in an affidavit in order to obtain a search warrant authorizing a forensic search of his iPhone. (Id. at 4.) Frazier claims that after obtaining the search warrant in Beaufort County, Barrett then participated in the execution of the warrant in Pitt County with Farrar and Baxter. (Id. at 4, 7, 9.) He argues that the warrant became invalid once it crossed into Pitt County, and, thus, the search of his iPhone was unlawful. (Id. at 7, 9.) Frazier also argues that Barrett, Farrar, and Baxter exceeded the scope of the warrant because it only authorized the seizure of data on the phone, and not the phone itself. (Id. at 9.) The fruits of this search, Frazier claims, served as the basis for the arrest warrant for the robbery charges. (Id.)

Frazier alleges Fourth and Fourteenth Amendment violations against Baxter and Dickinson stemming from his arrest on 7 April 2011. (Id. at 2, 3, 5, 6, 9.) He claims that Baxter, a GPD officer, arrested him at the WPD in Beaufort County, outside of Baxter's jurisdiction, "and then instead of taking [Frazier] in front of a magistrate without unnecessary delay, decided to drive [him] to [Pitt County]." (Id. at 2, 5-6.) Frazier argues that Dickinson, a WPD officer, claimed to be the officer that made the arrest and transported Frazier to Pitt County. (Id. at 6.) This statement by Dickinson was false, Frazier maintains, and "contributed to the judgment denying [his] suppression motion [in his criminal case]." (Id.)

10

In his criminal case, Frazier challenged the legality of the 31 March 2011 stop of his vehicle and arrest with the filing of a motion to suppress. (Case No. 4:11-CR-113-1-F, DE # 99.) In that motion, he specifically argued that Seighman lacked reasonable suspicion to stop his vehicle, and that as a result of the unlawful stop and arrest, his iPhone, $288 in cash, and his vehicle were seized. (Id. at 1-2). All of these items, Frazier argued, were "fruit of an illegal arrest." (Id. at 2.) In his order ruling on the motion, Judge Fox detailed Seighman's account of the incident and stated that "there appear to be legal as well as factual justifications for the stop." (Id., DE # 109, at 5.) Judge Fox, however, gave Frazier further opportunity "to offer evidence or otherwise mount a factual challenge to [] Seighman's Affidavit concerning the particulars of the traffic stop . . . ." (Id. at 11.) Frazier decided to forego any further challenge to Seighman's account of the stop. (Id., DE # 118, at 1.) Accordingly, Judge Fox denied the motion to suppress. (Id., DE # 125.)

Frazier challenged the sufficiency and execution of the 4 April 2011 search warrant in his criminal case as well. (Id., DE ## 76, 97.) In a separate motion to suppress, Frazier stated, "[T]he Search Warrant issued in Beaufort [C]ounty was actually executed in Pitt County. This evidence was improperly seized because under North Carolina law, the authority of a state magistrate to issue search warrants is limited to the county in which the magistrate resides." (Id., DE # 76, at 1-2.) He argued that because the warrant was executed without proper authority, any evidence obtained from the phone should be suppressed as fruit of the improper search. (Id. at 3.) In a supplemental motion to suppress, Frazier argued that the search of his iPhone was unlawful based on false statements made by Barrett in his affidavit in support of the search warrant. (Id., DE # 118, at 1-2.)

11

In an order holding Frazier's motion to suppress in abeyance, Judge Fox noted that Frazier cited no authority, other than the state statute, supporting the proposition that the search warrant became invalid once it left the county where it was issued. (Id., DE # 109, at 8.) Frazier did not contend that the warrant was not supported by probable cause. (Id.) Judge Fox stated that "Frazier has not advanced a viable legal or pragmatic argument in support of his [motion to suppress the] examination of the iPhone pursuant to the Beaufort County search warrant . . . ." (Id. at 10.) The court, however, gave Frazier an opportunity to further develop this argument. (Id.) In his supplemental motion to suppress, Frazier abandoned the jurisdictional argument in favor of the argument that Barrett made false statements in order to obtain the warrant. (Id., DE # 118.) The government responded, arguing that Barrett's statements provided no basis for challenging the sufficiency of the search warrant. (Id., DE # 120, at 3-5.) Judge Fox ultimately denied the motion to suppress evidence obtained from the search of Frazier's iPhone, adopting the government's response and his previous order "as expressing [the] rationale in denying Frazier's motions." (Id., DE # 125.)

In his criminal case, Frazier also fully litigated the claims arising out of his 7 April 2011 arrest. In another motion to suppress, Frazier argued that Baxter, a GPD officer, was outside of his jurisdiction, as prescribed by North Carolina law, when he arrested Frazier at the WPD. (Id., DE # 98, at 2.) Thus, he contended, his arrest was unlawful and all evidence derived therefrom should be suppressed. (Id.) Based on the details of this arrest set out in affidavits of Dickinson and Baxter, Judge Fox ruled that the arrest was lawful and that Frazier's motion to suppress was "factually unsupported." (Id., DE # 109, at 2; see also id., DE # 125.)

Both the Greenville and Washington defendants argue that Frazier's claims arising out of

12

these incidents are barred by the doctrine of collateral estoppel. (DE # 22, at 4; DE # 40, at 7.) The court agrees. Through the instant civil action, Frazier attempts to relitigate the identical issues presented in his motions to suppress in his criminal case. (Case No. 4:11-CR-00113-F-1, DE ## 76, 97-99, 118.) These issues were actually determined, and were both critical and necessary to Judge Fox's denial of the motions. (Id., DE ## 109, 125.) Judge Fox's orders were final and valid. (Id.) Additionally, Frazier had full and fair opportunity to litigate these issues, as he was represented by counsel when he filed the motions to suppress. Collateral estoppel thus operates to bar the relitigation of the issues arising out of the 31 March 2011, 4 April 2011, and 7 April 2011 incidents.

### C. Claims against the City of Greenville and the City of Washington

Municipalities are not immune from suit for money damages under § 1983. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). However, to assert a valid § 1983 claim against a municipality, a plaintiff must allege that a policy, practice, or custom of the municipality caused his injury. Id. at 691. The Fourth Circuit recognizes four ways in which a policy or custom can give rise to municipal liability:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest [s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal citations omitted). Thus, a plaintiff may not hold a municipality liable based merely on the municipality's employment of an individual who violated the plaintiff's rights. Monell, 436 U.S. at 691. "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id.

13

In his complaint, Frazier alleges that the City of Greenville "negligently allowed [Baxter and Farrar] to abuse their position of power by executing invalid search warrants and arresting the plaintiff outside the jurisdiction of [Greenville] in clear violation of the plaintiff's 4th and 14th Amendment right[s]." (DE # 5, at 8.) In Frazier's criminal case, Judge Fox determined that Baxter and Farrar's actions were constitutionally sound. (Case No. 4:11-CR-113-1-F, DE ## 109, 125.) Based on that determination discussed previously, the court has granted Baxter and Farrar's motion for judgment on the pleadings. Because Baxter and Farrar committed no constitutional violations, Frazier cannot maintain a § 1983 claim against the City of Greenville based on their actions.

Frazier argues that "[t]he City of Washington . . . is liable for the constitutional violations [of Barrett, Dickinson, and Seighman] based on the 'custom and usage' that is 'so permanent and well settled' as to have 'the force of law'." (DE # 5, at 8). He goes on to allege that this custom is "'persistent, widespread, long standing, and deeply embedded.'" (Id.) Frazier concludes by stating that the City "negligently allowed these officers to use the force of law to violate the plaintiff['s] constitutional rights." (Id.)

An allegation of isolated constitutional violations is insufficient to state a claim that a practice is so persistent and widespread as to amount to official municipal policy. See Lytle, 326 F.3d at 473 (stating that "it is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." (internal citations omitted)). Frazier concludes that the actions of the City's law enforcement officers are "persistent, widespread, longstanding, and deeply embedded" and establish a custom. (DE # 5, at 8.) Frazier fails, however, to buttress these legal conclusions with any facts

14

that make a claim against the City of Washington plausible. The court finds that Frazier has failed to state a claim against the City of Washington that would entitle him to relief.

**D. Frazier's motion for summary judgment**

Frazier has filed a motion for summary judgment against the Greenville defendants. (DE # 34.) In his motion, he restates the allegations he presented in his complaint, and argues that based upon the exhibits he attached to his motion, it is "impossible to dispute any alleged facts included in [his] complaint." (Id. at 2.) However, as noted above, all of Frazier's claims against the Greenville defendants are barred by collateral estoppel. Because the court will grant the Greenville defendants' motion for judgment on the pleadings, Frazier cannot prevail on his motion for summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Washington defendants' motion for judgment on the pleadings in GRANTED in part and DENIED in part. The Greenville defendants' motion for judgment on the pleadings is GRANTED. Plaintiff's motion for summary judgment is DENIED. Plaintiff's Equal Protection claims against Jerry Seighman based on the 21 February 2011 and 3 March 2011 stops are DISMISSED. The City of Washington, the City of Greenville, Jeffrey Baxter, Charles Farrar, Jesse Dickinson, and Isaac Barrett are DISMISSED from this action. Plaintiff's Fourth Amendment claims against Jerry Seighman based on the 21 February 2011 and

15

3 March 2011 stops remain.

    This 15 September 2014.

                                                                                       W. Earl Britt
                                                                                       Senior U.S. District Judge